UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| JASON CAMACHO AND ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED, | : : : : | Civil Action No. 1:18-cv-10816-PAE-HBP |
| Plaintiff, | : | |
| v. | : : | |
| LOYOLA UNIVERSITY NEW ORLEANS, | : : | |
| Defendant. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

---

John W. Egan
Samuel Sverdlov
Seyfarth Shaw LLP
jegan@seyfarth.com
ssverdlov@seyfarth.com
620 Eighth Avenue
New York, New York  10018
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

*Attorneys for Defendant*
*Loyola University New Orleans.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

FACTS ...................................................................................................................................... 4

I.       LOYOLA ...................................................................................................................... 4

II.      THE COMPLAINT ....................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

I.       THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER
         LOYOLA ....................................................................................................................... 6

         A.      The Court Lacks General Personal Jurisdiction Over Loyola ............................... 7

         B.      The Court Lacks Specific Personal Jurisdiction Over Loyola ............................... 8

                 1.      CPLR § 302(a)(2), (3), And (4) Do Not Apply .......................................... 9

                 2.      Plaintiff's Claims Did Not Arise Out Of A Transaction Of
                         Business In New York Under CPLR § 302(a)(1) ..................................... 10

                         (a)     Plaintiff's Claims Did Not Arise Out Of The Fair ........................ 10

                         (b)     The Allegations Regarding The Website Do Not Confer
                                 Personal Jurisdiction Over Loyola ............................................... 11

                                 i.      The Website Is Not "Interactive" ....................................... 11

                                 ii.     The Website Content At Issue Does Not Confer
                                         Personal Jurisdiction Over Loyola ..................................... 12

II.      THE COURT ALSO LACKS SUBJECT MATTER JURISDICTION OVER
         THIS ACTION .............................................................................................................. 14

         A.      Legal Standard Under Fed. R. Civ. P. 12(b)(1) .................................................. 14

         B.      Plaintiff Has Failed To Demonstrate An Actual Injury Or Any Likelihood
                 of Future Injury ................................................................................................. 15

                 1.      Plaintiff Did Not Suffer A Concrete And Particularized Injury .............. 15

                 2.      Plaintiff Faces No Real and Immediate Threat of Future Injury ............. 17

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access 4 All, Inc. v. Bamco VI, Inc.*,
   No. 11-61007, 2012 WL 33163 (S.D. Fla. Jan. 6, 2012) .........................................16

*Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*,
   No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005) .........................19

*Access for the Disabled, Inc. v. Rosof*,
   No. 805CV1413T30TBM, 2005 WL 3556046 (M.D. Fla. Dec. 28, 2005) .......................16, 19

*Amideax Trading Grp. v. S.W.I.F.T. SCR*,
   671 F.3d 140 (2d Cir. 2011) ..................................................................14

*Bacon v. Walgreens Co.*,
   91 F. Supp. 3d 446 (E.D.N.Y. 2015) ...........................................................20

*Bauman v. Garfinkle*,
   235 A.D.2d 245, 652 N.Y.S.2d 32 (1st Dep't 1997) ..............................................9

*Bernstein v. City of New York*,
   621 F. App'x 56 (2d Cir. 2015) ........................................................15, 17, 18

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)...........................................................10, 11, 13

*Brother v. Rossmore Tampa Ltd. P'ship*,
   No. 8:03CV1253T-24MAP, 2004 WL 3609350 (M.D. Fla. Aug. 19, 2004) .........................19

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016)....................................................................8

*Brown v. Web.com Grp., Inc.*,
   57 F. Supp. 3d 345 (S.D.N.Y. 2014)............................................................14

*Campbell v. Grady's Bar, Inc.*,
   No. 0:10-CV-60648, 2010 WL 2754328 (S.D. Fla. July 12, 2010).................................16

*Chapman v. Pier 1 (U.S.) Imports, Inc.*
   631 F.3d 939 (9th Cir. 2011) .................................................................16

*Coll. Essay Optimizer, LLC v. Edswell, Inc.*,
   No. 14-cv-8586, 2015 WL 5729681 (S.D.N.Y. Sept. 30, 2015) ...................................7

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................................7, 8

*DH Servs., LLC v. Positive Impact, Inc.*,
   No. 12-cv-6153, 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) ....................................7

*Faherty v. Spice Entm't, Inc.*,
   No. 04-cv-2826, 2005 WL 2036018 (S.D.N.Y. Aug. 18, 2005)................................7

*Feltzin v. Clocktower Plaza Properties, Ltd.*,
   No. 216CV4329DRHAYS, 2018 WL 1221153 (E.D.N.Y. Mar. 8, 2018) ..............17

*Feltzin v. Stone Equities, LLC*,
   No. CV166457SJFAKT, 2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018)..............18, 19

*Felzin v. Triangle Props. LLC*,
   No. 14-cv-5131, 2016 U.S. Dist. LEXIS 192861 (E.D.N.Y Dec. 15, 2016)..............15, 16, 17

*G31000 N. Am., Inc. v. Paris*,
   No. 14-CV-3885 (VEC), 2014 WL 6604790 (S.D.N.Y. Nov. 21, 2014) ..................7

*Garnet v. Ramos Bros. Inc.*,
   No. 16-cv-2792, 2017 WL 590323 (E.D.N.Y. Jan. 17, 2017)..................................18

*Girl Scouts of the U.S. v. Steir*,
   102 F. App'x 217 (2d Cir. 2004) ............................................................................12

*Gladstone Realtors v. Vill. of Bellwood*,
   441 U.S. 91 (1979)...................................................................................................15

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014)......................................................................................8

*Hilson v. D'More Help, Inc.*,
   No. 15-CIV-60155, 2015 WL 1737688 (S.D. Fla. Apr. 15, 2015)..........................16

*Holt v. Am. City Diner, Inc.*,
   No. CIV. 05-1745 (CKK), 2007 WL 1438489 (D.D.C. May 15, 2007)..................19

*Hurley v. Tozzer, Ltd.*,
   No. 15 Civ. 2785, 2018 WL 1872194 (S.D.N.Y. Feb. 2, 2018) ..............................18

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)......................................................................................7

*Johnson v. Ward*,
   4 N.Y.3d 516 (2005) ................................................................................................10

*Kreisler v. Second Ave. Diner Corp.*,
    731 F.3d 184 (2d Cir. 2013)..................................................................................................18

*Kurzon v. Thomas M. Cooley Law Sch.*,
    No. 12-cv-8352, 2014 WL 2862609 (S.D.N.Y. June 24, 2014) ..............................................11

*Lerner v. Fleet Bank N.A.*,
    318 F.3d 113 (2d Cir. 2003), *abrogated on other grounds by, Am. Psychiatric*
    *Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2016).......................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................................14

*M. Shanken Communs., Inc. v. Cigar500.com*,
    No. 07-cv-7371, 2008 WL 2696168 (S.D.N.Y. July 7, 2008)..................................................12

*Magee v. Coca-Cola Refreshments USA, Inc.*,
    833 F.3d 530 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017)...........................................20

*Mendez v. Apple, Inc.*,
    No. 18-cv-07550 (S.D.N.Y. Mar. 18, 2019) (Preska, J.) ...................................................16, 17

*Meyer v. Bd. of Regents*,
    No. 13-cv-3128, 2014 WL 2039654 (S.D.N.Y. May 14, 2014) ..............................................11

*Moser v. Pollin*,
    294 F.3d 335 (2d Cir. 2002).....................................................................................................14

*J.S. ex. rel. N.S. v. Attica Cent. Schs.*,
    386 F.3d 107 (2d Cir. 2004).....................................................................................................14

*Norkunas v. Wynn Resorts Holdings, LLC*,
    No. 2:07CV00096RLHPAL, 2007 WL 2949569 (D. Nev. Oct. 10, 2007) *aff'd*
    *sub nom. Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269 (9th Cir.
    2009) ........................................................................................................................................19

*Oliver v. Ralphs Grocery Co.*,
    654 F.3d 903 (9th Cir. 2011) ...................................................................................................16

*Ortiz v. Westchester Med. Ctr. Health Care Corp.*,
    No. 15 CIV. 5432 (NSR), 2016 WL 6901314 (S.D.N.Y. Nov. 18, 2016)...............................15

*Rivera v. Heyman*,
    157 F.3d 101 (2d Cir. 1998)......................................................................................................9

*Rush v. Denco Enterprises Inc*,
    No. EDCV 11-00030 DOC, 2011 WL 1812752 (C.D. Cal. May 12, 2011)............................16

*Sae Han Sheet Co. v. Eastman Chem. Corp.*,
No. 17-cv-2734, 2017 WL 4769394 (S.D.N.Y. Oct. 18, 2017)................................................8

*Saudi v. Marine Atl., Ltd.*,
306 F. App'x 653 (2d Cir. 2009) ........................................................................................7

*Seldon v. Direct Response Techs., Inc.*,
No. 03-cv-5381, 2004 WL 691222 (S.D.N.Y. Mar. 30, 2004)................................................13

*Skrodzki v. Marcello*,
810 F. Supp. 2d 501 (E.D.N.Y. 2011) .......................................................................10

*Small v. Gen. Nutrition Companies, Inc.*,
388 F. Supp. 2d 83 (E.D.N.Y. 2005) ........................................................................19

*Southern New England Tel. Co. v. Global NAPS Inc.*,
624 F.3d 123 (2d Cir. 2010)........................................................................................7

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)................................................................................................15

*SPV OSUS, Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)........................................................................................7

*Stoud v. Tyson Goods, Inc.*,
91 F. Supp. 3d 381 (E.D.N.Y. 2015) .......................................................................8

*Sullivan v. BH Media Group, Inc.*,
No. 17 Civ. 8139 (S.D.N.Y. May 15, 2018) (Daniels, J.)........................................13

*Thackurdeen v. Duke Univ.*,
130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016)........................8

*Touro Coll. v. Fondazione Touro Univ. Rome Onlus*,
No. 16-cv-3136, 2017 WL 4082481 (S.D.N.Y. Aug. 31, 2017)........................................11, 13

*Weerahandi v. Am. Statistical Ass'n*,
No. 14-cv-7688, 2015 WL 5821634 (S.D.N.Y. Sept. 30, 2015) ...............................9

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)........................................................................................6

## Statutes

Americans with Disabilities Act ............................................................................ *passim*

New York City Human Rights Law.........................................................................9

New York State Human Rights Law ......................................................................9

**Other Authorities**

28 C.F.R. § 36.303(c)...............................................................................................19

C.P.L.R. § 301............................................................................................................7

C.P.L.R. § 302............................................................................................................7

C.P.L.R. § 302(a).......................................................................................................10

C.P.L.R. § 302(a)(1)............................................................................................ *passim*

C.P.L.R. § 302(a)(2).............................................................................................1, 9

C.P.L.R. § 302(a)(3).............................................................................................1, 9

C.P.L.R. § 302(a)(4).........................................................................................1, 9, 10

Fed. R. Civ. P. 12(b)(1).................................................................................3, 14, 16, 20

Fed. R. Civ. P. 12(b)(2).......................................................................................*passim*

U.S. Const. Art. III, § 2..............................................................................................14

## PRELIMINARY STATEMENT

In this action, Plaintiff Jason Camacho ("Plaintiff") claims that Loyola University New Orleans ("Loyola" or the "Defendant") maintains a website, www.loyno.edu (the "Website"), that is not accessible to individuals who are visually impaired under Title III of the Americans with Disabilities Act ("ADA") and related state and city laws.  The Court should dismiss this action because it does not have personal jurisdiction over Loyola, or subject matter jurisdiction over this action.

The Court does not have general personal jurisdiction over Loyola.  This institution is not incorporated in New York, and does not have its principal place of business in the state.  It has insufficient contacts with New York to qualify as an "exceptional case" warranting the exercise of general personal jurisdiction under these circumstances, and Plaintiff does not allege otherwise. In addition, the Court does not have specific personal jurisdiction over Loyola under the New York long arm statute.  Plaintiff fails to allege a tort, or a claim arising out of real property, for purposes of CPLR 302(a)(2)-(3) and 302(a)(4), respectively.  Also, neither Loyola's attendance at a student recruitment fair last year (the "Fair") nor the functionality of its website qualify as a transaction of business in the state from which Plaintiff's claims arose under CPLR 302(a)(1).

Plaintiff alleges that he attended the Fair in New York City on November 5, 2018 and afterwards attempted to access the Website with his screen reader when he encountered certain barriers to access.  Plaintiff did not communicate with Loyola's representatives at the Fair or thereafter.  He filed this and 49 other, nearly identical lawsuits against attendee institutions from across the country within 8 days of the event.  Nineteen of these institutions are also represented by the undersigned, are moving to dismiss, and will attest in their papers that Plaintiff did not communicate with their representatives at the Fair either.  Plaintiff's claims are unrelated to any acts or omissions by Loyola at the Fair and do not arise out of this event for jurisdictional purposes.

1

Also, even if Plaintiff's claims were related to the Fair, Loyola's attendance hardly qualifies as "purposeful availment" of this forum based on its attendance at similar events throughout the United States.  In 2018, for example, Loyola participated in over 2,200 student recruitment events (including approximately 540 college fairs) across the United States and Puerto Rico.

Following a pre-motion conference in a case that Plaintiff filed against another institution that attended the Fair, he amended the Complaint to add two conclusory paragraphs attesting to the Website's "interactivity," presumably to support his jurisdictional claim in response to this anticipated motion.  Plaintiff's claims, however, do not arise from this online functionality, is not sufficient to confer specific personal jurisdiction in any event.  Plaintiff does not allege that he tried to use the "interactive" features allowing prospective students to book interviews and meetings, schedule tours and calculate financial aid, for example.  To the contrary, the gravamen of the original and amended pleadings is that Plaintiff could not access far more fundamental and basic information about Loyola, which, ironically, its representatives were available to provide to Plaintiff had he approached their booth at the Fair.

The paragraph in the Amended Complaint listing purportedly "interactive" Website content is, by and large, copied in Plaintiff's 19 other amended complaints.  Under prevailing authority in this Circuit, examining a website's interactivity may be useful for the District Court, but only to the extent it helps to determine whether the institution has purposefully availed itself of this forum.  There was no such purposeful availment here.  None of the allegedly interactive features on the Website target New York residents in any way, or relate to Plaintiff's specific experience with the Website.  Moreover, these alleged features do not amount to fully "interactive" content because they do not provide for the transmission of goods and services into New York pursuant to a contractual relationship but, instead, provide informational content and, at best,

2

facilitate informational exchanges between potential students and the institution.  These facts warrant a full dismissal under Federal Rule 12(b)(2).

Apart from the lack of personal jurisdiction over Loyola, Plaintiff cannot satisfy his burden to show standing by a preponderance of the evidence.  Plaintiff's lack of engagement at the Fair with Loyola representatives (and those from at least 19 other institutions), squarely undermine his conclusory, "cut and paste" allegations of harm, including that the alleged Website barriers are somehow preventing him from visiting 50 colleges and universities from 19 states, 42 cities, and the District of Columbia.  The Amended Complaint is utterly silent on why Plaintiff has an interest in Loyola, or what information he was trying to access when he encountered a laundry list of alleged barriers derived from the Web Content Accessibility Guidelines ("WCAG").

As the tide of website-related ADA lawsuits continues to swell in this jurisdiction, federal courts are nonetheless only authorized by the Constitution to decide "Cases" and "Controversies." Plaintiff must establish an injury that is both concrete and particular to him.  Additionally, he must show a likelihood that injury in the future is imminent to support any claim for an injunction, which is the only relief available under Title III of the ADA.  As a court in this District recently held in dismissing a similar complaint filed by Plaintiff's counsel, an ADA plaintiff who files nearly identical lawsuits en masse must show that "the harms to be remedied do exist and are indeed identical," and that "those who live by the photocopier shall die by the photocopier."  As there is no plausible basis from which the Court can conclude that Plaintiff has suffered an actual injury, and will suffer one in the future unless the Court issues an injunction, this action should be dismissed under Federal Rule 12(b)(1) as well.

## FACTS

### I.   LOYOLA

Loyola is organized under the laws of Louisiana and has its principal place of business in New Orleans, Louisiana.  (Declaration of Nathan Ament, dated February 28, 2019, ("Ament Dec.") at ¶ 3.)  It does not own, operate, lease or otherwise possess real property in New York, does not maintain any offices or bank accounts in New York, has not entered into any contracts to supply goods or services in New York, is neither authorized nor registered to do business in New York, and does not have a registered agent in New York.  (*Id*. at ¶¶ 5-10.)  Loyola does not target New York over other states where it recruits students, it does not advertise in any New York publications, and only 2.16 percent of its students are New York residents.  (*Id.* at ¶¶ 13-14.)  Loyola neither advertises in New York publications, nor holds any classes, seminars, volunteer programs or other academic events in the state.  (*Id.* at ¶¶ 11-12.)  Plaintiff is not a current student in, or applicant to, any of Loyola's programs, and Loyola does not have a record of any correspondence or other contact with Plaintiff.  (*Id.* at ¶¶ 18-19.)  Additionally, Loyola does not sell merchandise or services through the Website at issue in this litigation, and in any event, the Website was neither created nor maintained in New York, and there are no individuals working or residing in New York who can alter or create any content for the Website. (*Id.* at ¶¶ 15, 17.)

### II.   THE COMPLAINT

This action concerns the Website, which is owned and operated by Loyola. (Declaration of John W. Egan dated April 12, 2019 ("Egan Dec."), Exh. "B" (Amended Complaint or "Am. Compl."), at ¶¶ 4-5.)  Plaintiff alleges that he is visually impaired and that, on November 5, 2018, he attended the Fair in New York.  (*Id*. at ¶¶ 20, 33.)  Plaintiff did not visit the booth of Loyola or at least 19 other colleges and universities that attended the Fair that are defending nearly identical

lawsuits.[1]  (Declaration of Charles Patrick Gendusa, dated February 28, 2019 ("Gendusa Dec.") at ¶¶ 4-6.)  Plaintiff thereafter commenced this lawsuit against Loyola, as well as at least 49 other institutions of higher learning based on alleged barriers to access on their respective websites within 8 days of the Fair.  (Am. Compl. at ¶¶ 34-36; Declaration of Susan Ryan dated April 22, 2019 ("Ryan Dec.") at ¶ 4-6.)

Plaintiff alleges that he attempted to access the Website shortly after attending the Fair on November 5, 2018.  He alleges that the Website provides informational content to prospective students and members of the public throughout the United States that is not sufficiently compatible with screen reader technology for the blind or visually impaired.  In this and Plaintiff's 49 other lawsuits against institutions that attended the Fair, he specifically, and repeatedly, alleges that inaccessible content on the websites relate to such basic information as the institutions' course and degree offerings, campus location and hours, tuition and financial aid, career services, accreditation, faculty, campus security, transfer credits, and textbooks.  (Am. Compl., at ¶¶ 22, 30, 35, 36, 42, 49; Ryan Dec. at ¶ 6.)  In all these cases, which Plaintiff has filed against colleges and universities in 19 states, 42 cities, and the District of Columbia, he specifically alleges that he

---

[1]      Defendants in the following *Camacho* actions are in the process of filing similar motions as Loyola in response to the Amended Complaint and will aver that Plaintiff did not visit their respective booth at the Fair or otherwise initiate communications of any kind:  *Camacho v. Bennington College Corp.*, Case No.: 1:18-cv-10541-DAB (S.D.N.Y.); *Camacho v. California Institute of the Arts*, Case No.: 1:18-cv-10575-GBD (S.D.N.Y.); *Camacho v. DeSales University*, Case No.: 1:18-cv-10596-RA (S.D.N.Y.); *Camacho v. Drexel University*, Case No.: 1:18-cv-10597-LTS-RWL (S.D.N.Y.); *Camacho v. Emerson College*, Case No.: 1:18-cv-10600-ER (S.D.N.Y.); *Camacho v. Gettysburg College*, Case No.: 1:18-cv-10822-JPO (S.D.N.Y.); *Camacho v. Lawrence University*, Case No.: 1:18-cv-10850-PGG-RWL (S.D.N.Y.); *Camacho v. Muhlenberg College*, Case No.: 1:18-cv-10761-GBD (S.D.N.Y.); *Camacho v. Northeastern University*, Case No.: 1:18-cv-10693-ER (S.D.N.Y.); *Camacho v. Oberlin College and Conservatory*, Case No.: 1:18-cv-10814-VEC (S.D.N.Y.); *Camacho v. Point Park University*, Case No.: 1:18-cv-10887-JGK (S.D.N.Y.); *Camacho v. Rider University*, Case No.: 1:18-cv-10700-ER (S.D.N.Y.); *Camacho v. Sacred Heart University Inc.*, Case No.: 1:18-cv-10697-DAB (S.D.N.Y.); *Camacho v. Southern Methodist University Inc.*, Case No.: 1:18-cv-10695-DAB (S.D.N.Y.); *Camacho v. Stevens Inst. Of Tech.*, Case No.: 1:18-10765-DAB (S.D.N.Y.); *Camacho v. Stevenson University Inc.*, Case No.: 1:18-cv-10825-LTS-KNF (S.D.N.Y.); *Camacho v. The Catholic University of America*, Case No.: 1:18-cv-10586-PGG (S.D.N.Y.); *Camacho v. Vanderbilt University*, Case No.: 1:18-cv-10694-KPF (S.D.N.Y.); *Camacho v. University of New Haven*, Case No.: 1:18-cv-10760-PGG (S.D.N.Y.).

"intends to visit Defendant's school in the near future if he could access their website."  (Am. Compl., at ¶ 42; Ryan Dec. at ¶ 6(b).)  Further, Plaintiff identifies four categories of barriers under WCAG that he alleges he encountered "[w]hile attempting to navigate the Website": "Lack of Alternative Text," "Empty Links That Contain No Text," "Redundant Links," and "Linked Images Missing Alt-text."  (Am. Compl. at ¶ 36.)

Following a pre-motion conference in a case that Plaintiff filed against Point Park University, another institution that attended the Fair (*see Camacho v. Point Park Univ.*, No. 1:18-cv-10887-JGK), Plaintiff amended the Complaint on March 21, 2019 to add two paragraphs in support of his legal claim that the Website is "interactive" for purposes of personal jurisdiction. (Am. Compl. and Egan Dec., Exh. "C," at ¶ 10.)  Specifically, the Amended Complaint avers that the Website offers "prospective students" the ability to apply online, schedule a visit, tour and interview, and use a "net price calculator" to ascertain qualifications for merit-based awards and determine the nature and extent of financial aid that would be available to prospective students. (Am. Compl., at ¶ 10.)  Plaintiff made similar amendments to the pleadings in the 19 other website accessibility cases he has filed against Fair attendees that are also moving to dismiss.[2]  The only alleged connection between the Website and New York is the allegation that Plaintiff accessed the Website while present in this forum.  (*Id.* at ¶ 34.)

## ARGUMENT

## I.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER LOYOLA

The Court should dismiss this action under Federal Rule 12(b)(2) because the Court does not have personal jurisdiction over Loyola.  Plaintiff has the burden of proof once served with a Rule 12(b)(2) motion.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001);

---

[2]     *See supra*, n.1.

*G31000 N. Am., Inc. v. Paris*, No. 14-CV-3885 (VEC), 2014 WL 6604790, at \*2 (S.D.N.Y. Nov. 21, 2014).  He must make a specific averment of facts that are sufficiently supported to demonstrate that the Court has jurisdiction.  *DH Servs., LLC v. Positive Impact, Inc.*, No. 12-cv-6153, 2014 WL 496875, at \*2 (S.D.N.Y. Feb. 5, 2014) (citing *Southern New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)).  Further, Plaintiff must satisfy his burden to make out a *prima facie* case before he can seek jurisdictional discovery.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998).  New York law applies to this inquiry.  *See Coll. Essay Optimizer, LLC v. Edswell, Inc.*, No. 14-cv-8586, 2015 WL 5729681, at \*3 (S.D.N.Y. Sept. 30, 2015) (law of forum state applies in federal question cases involving statutes without their own jurisdictional provisions); *Faherty v. Spice Entm't, Inc.*, No. 04-cv-2826, 2005 WL 2036018, at \*4 (S.D.N.Y. Aug. 18, 2005) (law of forum state applies in diversity actions).

To assess whether it has personal jurisdiction over Loyola, the Court must evaluate whether there is general jurisdiction under C.P.L.R. § 301, or specific personal jurisdiction under the New York long arm statute, C.P.L.R. § 302.  If either exists, the Court must determine whether the exercise of jurisdiction comports with due process.  *Saudi v. Marine Atl., Ltd.*, 306 F. App'x 653, 654-55 (2d Cir. 2009).  While general personal jurisdiction permits a court to hear any claims against a non-domiciliary defendant, specific jurisdiction, in contrast, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (quotation and citation omitted).

## A.    The Court Lacks General Personal Jurisdiction Over Loyola

To assert general personal jurisdiction, a foreign corporation must have contacts that are so "continuous and systematic" that they render the corporation essentially "at home" in the forum state.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014).  Absent an "exceptional case," general personal jurisdiction will only exist over a foreign corporation in New York if it is (1)

incorporated in the state, or (2) has its principal place of business in New York. *See Id*. at 139 n.19; *Sae Han Sheet Co. v. Eastman Chem. Corp.*, No. 17-cv-2734, 2017 WL 4769394, at *6 (S.D.N.Y. Oct. 18, 2017) (no personal jurisdiction in New York because defendant was neither incorporated nor had its principal place of business in the state).

Here, Plaintiff concedes that Loyola is not incorporated in New York, does not have its principal place of business in the state, and does not have any contacts that would qualify as an "exceptional case" warranting the exercise of general personal jurisdiction.[3]  (Ament Dec. at ¶¶ 3-17; Am. Compl. at ¶ 21.)  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (internal citations omitted) (without incorporating or having principal place of business in New York, even "systematic and continuous" contacts "extraordinarily unlikely to add up to an 'exceptional case'"); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 799-800 (S.D.N.Y. 2015) ("myriad of cases" hold that national universities not subject to general personal jurisdiction "outside of their state of incorporation or operation"), *aff'd*, 660 F. App'x 43, 45 (2d Cir. 2016). Thus, the only issue under Federal Rule 12(b)(2) is whether Plaintiff's claims arose out of Loyola's contacts with New York to confer specific jurisdiction. *Stoud v. Tyson Goods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015).

## B.     The Court Lacks Specific Personal Jurisdiction Over Loyola

A non-domiciliary defendant is subject to specific personal jurisdiction in New York only if the plaintiff's claims "aris[e]" from one of four (4) specifically enumerated acts under the New York long-arm statute:

> (1)  transaction of any business in New York or contracts anywhere to supply goods or services in New York, C.P.L.R. §  302(a)(1);

---

[3]      The Second Circuit has applied *Daimler* to hold that even a foreign corporation that maintains an office in New York does not qualify as an "exceptional case." *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19).

(2) commission of a tortious act in New York, except as to a cause of action for defamation of character arising from the act, C.P.L.R. §  302(a)(2);

(3) commission of a tortious act outside of New York causing injury to persons or property in New York, if the non-domiciliary:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce, CPLR 302(a)(3); or

(4) ownership, use, or possession of any real property situated within the New York, CPLR 302(a)(4).

Sections 302(a)(2), 302(a)(3), and 302(a)(4) are plainly inapplicable to the matter at hand, and Plaintiff also cannot show that his claims for relief arose from a transaction of business in New York under Section 302(a)(1).

### 1.      CPLR § 302(a)(2), (3), And (4) Do Not Apply

Plaintiff cannot establish specific jurisdiction under Section 302(a)(2) or Section 302(a)(3). Plaintiff alleges that Loyola failed to provide internet content that is sufficiently compatible with current screen reader technology, based on his interpretation of the ADA, as well as state and municipal civil rights laws.  As none of these discrimination claims arose out of a common law duty, the Amended Complaint does not allege a tort in the first instance.  *See Bauman v. Garfinkle*, 235 A.D.2d 245, 652 N.Y.S.2d 32 (1st Dep't 1997) (ADA claims are not in tort); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (discrimination claims under the New York State Human Rights Law are not in tort); *Weerahandi v. Am. Statistical Ass'n*, No. 14-cv-7688, 2015 WL 5821634, at *4 (S.D.N.Y. Sept. 30, 2015) (no personal jurisdiction under CPLR 302(a)(2) or 302(a) because discrimination claims under federal law, the New York State Human Rights Law, and the New York City Human Rights Law are not in tort).

Further, Loyola does not own, use, or possess any real property in New York as required to confer jurisdiction under Section 302(a)(4). (Ament Dec. at ¶ 7.) Plaintiff does not allege otherwise. This action does not relate to real property and thus Section 302(a)(4) does not apply as well.

### 2.   Plaintiff's Claims Did Not Arise Out Of A Transaction Of Business In New York Under CPLR § 302(a)(1)

To demonstrate specific personal jurisdiction under Section 302(a)(1) of the New York long-arm statute, Plaintiff must show, not only that Loyola transacted business in the state, but that his claims arise out of those transactions. CPLR § 302(a); *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 508 (E.D.N.Y. 2011). The Second Circuit has held that there must be an "articulable nexus, or a substantial relationship" between the plaintiff's claims, on one hand, and the defendant's acts occurring in New York, on the other. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citations omitted). *See also Johnson v. Ward,* 4 N.Y.3d 516, 519 (2005) (requiring "substantial relationship" between plaintiff's claims and the New York-based transaction of business for the exercise of jurisdiction under Section 302(a)(1). Here, Plaintiff cannot demonstrate a transaction of business in New York with the requisite connection to his claims.

### (a)   Plaintiff's Claims Did Not Arise Out Of The Fair

Plaintiff's claims concern the accessibility of the Website rather than any alleged acts or omissions by Loyola at the Fair. It is undisputed that Plaintiff never communicated with Loyola's personnel at the Fair, or at any time thereafter. (Gendusa Dec. at ¶¶ 4-6; Am. Compl. at ¶¶ 30-31, 35-36.) Accordingly, Plaintiff's claims did not arise out of the Fair for purposes of Section

302(a)(1).[4]  *See Kurzon v. Thomas M. Cooley Law Sch.*, No. 12-cv-8352, 2014 WL 2862609, at

*5 (S.D.N.Y. June 24, 2014) (no specific jurisdiction under Section 302(a)(1) because plaintiff's

claims were "not based on . . . [defendant's] law school recruitment fair participation" in New

York).

> **(b)      The Allegations Regarding The Website Do Not Confer Personal Jurisdiction Over Loyola**

It is well-established in this Circuit that operating a website does not confer nationwide

personal jurisdiction.  *See e.g. Best Van Lines*, 490 F.3d at 253 ("[t]he mere existence of a website

that is visible in a forum and that gives information about a company and its products is not enough,

by itself, to subject a defendant to personal jurisdiction in that forum") (quotation and citations

omitted).  The Second Circuit has held that evaluating a website's interactivity "may be useful . . .

but only insofar as it helps to decide whether . . . the defendant, through the website, purposefully

avail[ed] himself of the privilege of conducting activities in New York, thus invoking the benefits

and protections of its laws."  *Id.* at 252 (quotation and citations omitted).  Here, there was no

transaction of business in New York through the Website that gave rise to Plaintiff's claims.

> **i.      The Website Is Not "Interactive"**

A fully interactive website allows a non-domiciliary to knowingly transmit goods and

services into New York.  *Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, No. 16-cv-3136,

2017 WL 4082481, at *28-9 (S.D.N.Y. Aug. 31, 2017).  *See also Best Van Lines*, 490 F.3d at 251

(interactive websites allow residents of the forum state to enter into contracts with the defendant

"that involve the knowing and repeated transmission of computer files over the Internet")

---

[4]      The act of simply attending the Fair also does not qualify as purposeful business activity in New York.  In 2018, Loyola participated in approximately 540 college fairs, 794 high school visits, and over 900 other college recruitment activities across the United States and Puerto Rico.  (Ament Dec. at ¶ 13.)  *See Meyer v. Bd. of Regents*, No. 13-cv-3128, 2014 WL 2039654, at *3-4 (S.D.N.Y. May 14, 2014) (activities of recruiting, soliciting, and receiving contributions nationwide, including from New York residents, are insufficient to confer personal jurisdiction).

(quotation omitted).  Plaintiff's allegations concern, in contrast, access to information about Loyola for a prospective student rather than a commercial transaction that may be completed online. The allegations in the Amended Complaint do not even approach the degree of interactivity that may, without more, warrant the exercise of personal jurisdiction over a non-domiciliary website operator in New York.  *But cf. M. Shanken Communs., Inc. v. Cigar500.com*, No. 07-cv-7371, 2008 WL 2696168, at *5 (S.D.N.Y. July 7, 2008) (substantially interactive website allowed users to order products for delivery to New York and complete payments online).

### ii. The Website Content At Issue Does Not Confer Personal Jurisdiction Over Loyola

The gravamen of the Amended and original Complaint is that Plaintiff was precluded from learning about Loyola such as, for example, its "school location and hours," "programs of instruction," and "cost of tuition."  (Am. Compl. at ¶¶ 22, 30, 35, 36(a), 42.)  Thus, what is at issue here is *informational content* transmitted to every state in the nation over the Website.  *See Girl Scouts of the U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (summary order) (no specific jurisdiction under Section 302(a)(1) based on informational website content "directed at the entire United States").  Other than relying on Loyola's attendance at the Fair, which was one of 2,200 similar recruitment events and activities that Loyola participated in across the United States and Puerto Rico that year, Plaintiff has not shown any connection to New York from which his claims arose.  (Ament Dec. at ¶ 13.)

In the Amended Complaint, Plaintiff cites features of the Website that would be included in most, if not all, websites of institutions of higher learning.  This includes the ability to send messages and submit forms to Loyola over the Website, estimate tuition and potential financial aid, and submit an application.  (Am. Compl. at ¶ 10.)  These allegations cannot salvage Plaintiff's jurisdictional claim, for several reasons.

First, Plaintiff's claims did not arise out of this content because he is not a student in, or applicant to, any of Loyola's programs, and does not allege that he attempted to use these features in the first instance. (Ament Dec. at ¶ 18.)  Second, the alleged features include content on third-party websites and are thus irrelevant to Plaintiff's claims.[5]  Third, most of these features are simply a means for prospective students to communicate with Loyola to obtain additional information and do not constitute a transaction of business.  *See Touro Coll.*, 2017 WL 4082481, at *9-10 (website of non-domiciliary educational institution allowing potential students to send messages and submit forms over website did not confer personal jurisdiction over Section 302(a)(1)); *Seldon v. Direct Response Techs., Inc.*, No. 03-cv-5381, 2004 WL 691222, at *5 (S.D.N.Y. Mar. 30, 2004) (website of non-domiciliary company including interactive message boards did not confer personal jurisdiction where plaintiff did not establish that the message boards specifically targeted New York users).  Accordingly, the Website does not confer personal jurisdiction over Loyola with respect to Plaintiff's ADA and related state and city claims.  *See Sullivan v. BH Media Group, Inc.*, No. 17 Civ. 8139 (S.D.N.Y. May 15, 2018) (Daniels, J.) (Egan Dec., Exh. "E"), at 2:23-25; 7:16-22; 20:13-26:22 (dismissing website accessibility action under Rule 12(b)(2), even where website had New York subscribers, and allowed users to self-identify as New York residents through the functionality of the site when completing the subscription process).

Thus, Plaintiff cannot demonstrate specific personal jurisdiction under Section 302(a)(1). For this reason, not only would the exercise of personal jurisdiction over Loyola be contrary to the New York long arm, it would also violate due process.  *See Best Van Lines, Inc.*, 490 F.3d at 247 (New York courts apply the constitutional, purposeful availment standard when determining

---

[5]    *See* Am. Compl. ¶ 10, available at https://apply.commonapp.org/login?ma=104 (universal online application operated on the website of The Common Application, Inc.).

whether jurisdiction exists under Section 302(a)(1)); *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014) ("the "minimum contacts evaluation, overlaps significantly with New York's § 302(a)(1) inquiry into whether a defendant has transacted business in the State.")

## II.    THE COURT ALSO LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

In addition to Federal Rule 12(b)(2), there is yet another independent reason why this action should be dismissed.  The Court does not have subject matter jurisdiction over the action because Plaintiff does not have standing.  Accordingly, the Court should dismiss this action under Rule 12(b)(1) as well.

### A.    Legal Standard Under Fed. R. Civ. P. 12(b)(1)

Plaintiff has the burden to prove subject matter jurisdiction by a preponderance of the evidence.  *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002).  Although Plaintiff must "allege facts that affirmatively and plausibly suggest" that he has standing, *Amidax Trading Grp. v. S.W.I.F.T. SCR*, 671 F.3d 140, 145 (2d Cir. 2011), the Court should not draw inferences favorable to Plaintiff, and may consider materials extrinsic to the pleadings.  *J.S. ex. rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Conclusory allegations will not suffice to establish standing.  *See Amidax Trading Grp.*, 671 F.3d at 146-47 (citation omitted).

Article III of the U.S. Constitution limits the role of the federal judiciary to deciding only "Cases" and "Controversies."  U.S. CONST. ART. III, § 2.  Thus, to have standing to maintain this action, Plaintiff must show: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Since ADA Title III claims provide for injunctive relief

only, Plaintiff has the additional burden to show that he faces a "real and immediate threat of future injury" through specific, non-conclusory averments. *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (quotation and citation omitted).

**B.    Plaintiff Has Failed To Demonstrate An Actual Injury Or Any Likelihood of Future Injury**

**1.    Plaintiff Did Not Suffer A Concrete And Particularized Injury**

The United States Supreme Court requires that any plaintiff demonstrate a "concrete" injury that is "real" rather than "abstract," which is not "automatically satisfie[d] . . . whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016).  An ADA litigant must specifically show that he suffered a "distinct and palpable injury to himself."  *See Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15 CIV. 5432 (NSR), 2016 WL 6901314, at *5 (S.D.N.Y. Nov. 18, 2016) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)).

In ADA Title III cases, courts in the Second Circuit and other circuits have interpreted the concrete and particularized injury element as requiring plaintiffs to identify the specific barriers they encountered and how each barrier affected them.  For example, in *Felzin v. Triangle Props. LLC*, the plaintiff alleged that he "encountered architectural barriers at the subject property" and that such barriers "impaired [his] ability to park safely at the premises, to use restrooms safely and to access goods and services at the premises."  No. 14-cv-5131, 2016 U.S. Dist. LEXIS 192861, at *2, 16 (E.D.N.Y Dec. 15, 2016) ("*Triangle Properties*").  The plaintiff also provided a "laundry list" of alleged barriers, but provided "no additional information concerning either these alleged encounters or any resulting injuries." *Id.* at *14, 16.  The court concluded that the plaintiff had not

suffered a concrete and particularized injury and had no standing to sue because he had not identified the barriers he personally encountered or how they affected him.[6] *Id.* at \*4-6.

Significantly, a court in this District recently applied the rationale set forth in Triangle Properties to dismiss a similar website accessibility action filed by Plaintiff's counsel under Rule 12(b)(1). See *Mendez v. Apple, Inc.*, No. 18-cv-07550 (S.D.N.Y. Mar. 18, 2019) (Preska, J.) (Egan Dec., Exh. "G"), at p. 4 ("Mendez") (applying Triangle Properties to dismiss website accessibility action under Rule 12(b)(1) where the plaintiff failed to identify "what good or service she was prevented from purchasing," "the sections of the website she tried to access but could not", or which of the "general barriers . . . prevented her from accessing the store"). The Amended Complaint here is significantly more deficient than the complaints in *Triangle Properties* and *Mendez*, for several reasons.

First, the Amended Complaint does not address whether and why Plaintiff is interested in attending Loyola, what programs he has an interest in, or what specific information he was seeking on the Website (other than the same broad categories of information recited in all his college and university complaints).  (Am. Compl. at ¶¶ 22, 30, 35, 36(a), 42; Ryan Dec. ¶ 6(b).)

---

[6]     The analysis and decision in *Triangle Properties* is consistent with that from other courts. *See, e.g.*, *Chapman v. Pier 1 (U.S.) Imports, Inc.* 631 F.3d 939, 955 (9th Cir. 2011) (no standing where complaint listed barriers but did not state how each barrier affected plaintiff's specific disability); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907–08 (9th Cir. 2011) (complaint listing barriers without specifying which were personally encountered and how each barrier denied the plaintiff access is not sufficient to establish standing); *Rush v. Denco Enterprises Inc*, No. EDCV 11-00030 DOC, 2011 WL 1812752, at \*2 (C.D. Cal. May 12, 2011) (to establish standing, "[a] plaintiff must identify the barriers that she personally encountered, connect to barriers to her disability, and state the manner in which the barriers impeded her full and equal enjoyment of the facility."); *Access 4 All, Inc. v. Bamco VI, Inc.*, No. 11-61007, 2012 WL 33163, at \*3 (S.D. Fla. Jan. 6, 2012) (plaintiff only has standing for ADA violations "which affect his specific disability, and that he personally encountered or about which he had actual notice at the time the complaint was filed") (quotation and citations omitted); *Access for the Disabled, Inc. v. Rosof*, No. 805CV1413T30TBM, 2005 WL 3556046, at \*2 (M.D. Fla. Dec. 28, 2005) ("a plaintiff's particular disability and his or her encounter with the alleged barriers to access are relevant factors to be considered."); *Hilson v. D'More Help, Inc.*, No. 15-CIV-60155, 2015 WL 1737688, at \*5 (S.D. Fla. Apr. 15, 2015) (no standing where complaint "does not include any facts from which this Court can infer that Plaintiff could not fully enjoy Defendants' facilities, services, goods and amenities because of his encounter with any of the barriers listed") (quoting *Campbell v. Grady's Bar, Inc.*, No. 0:10-CV-60648, 2010 WL 2754328, at \*2 (S.D. Fla. July 12, 2010)).

16

Second, the Amended Complaint recites a list of four generic Website barriers (*i.e.*, "Lack of Alternative Text," "Empty Links That Contain No Text," "Redundant Links," and "Linked Images Missing Alt-Text"), without providing any information as to where on the Website Plaintiff encountered these alleged barriers, or what information the barriers prevented him from accessing. (Am. Compl., at ¶ 36.); *Mendez*, at p. 2 (identifying the same four barriers).

Third, the Amended Complaint does not provide the dates when Plaintiff actually visited the Website. This lack of specificity undermines the concreteness of Plaintiff's injury.[7]

As a litigant who has filed a large number of lawsuits in this District (*i.e.* 98 cases) in only 18 months, it is particularly incumbent on Plaintiff to allege sufficient facts to support his standing to maintain this action. *See also Feltzin v. Clocktower Plaza Properties, Ltd.*, No. 216CV4329DRHAYS, 2018 WL 1221153, at *5 (E.D.N.Y. Mar. 8, 2018) (dismissing case based on lack of standing where plaintiff filed more than 80 cases over three-and-a-half years); *Mendez*, at p. 10 (ADA litigant who files multiple similar actions against different defendants must show that the "harms to be remedied do exist and are indeed identical," and noting that "those who live by the photocopier shall die by the photocopier"). For all the foregoing reasons, Plaintiff cannot demonstrate that he has suffered an injury that is "concrete and particular." *Triangle Properties*, 2017 U.S. Dist. LEXIS 192861, at *12.

### 2.  Plaintiff Faces No Real and Immediate Threat of Future Injury

As discussed above, plaintiffs in ADA Title III cases "must also prove that the identified injury in fact presents a real and immediate threat of future injury" because the statute only provides for injunctive relief. *See, e.g.*, *Bernstein*, 621 F. App'x at 57 (internal quotations and citations omitted) (court could not infer plaintiff's intent to return to the park in the future based

---

[7]  *See supra,* n.6.

on more than 100 past visits to the park, and remanded for more fact-finding).  Specifically, a plaintiff must establish: (1) past injury under the ADA; (2) a reasonable inference of continued discriminatory treatment, and (3) a reasonable inference that the plaintiff plans to return to the subject location based on the past frequency of plaintiff's visits and the proximity of defendant's facility to the plaintiff's home.  *See, e.g.*, *Id.*;  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013); *Feltzin v. Stone Equities, LLC*, No. CV166457SJFAKT, 2018 WL 1115135, at *11 (E.D.N.Y. Feb. 8, 2018) (there must be a "plausible and definitive intent to return" to the property at issue in the case); *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1872194, at *6 (S.D.N.Y. Feb. 2, 2018) (no standing where plaintiff failed to submit any evidence demonstrating an intent to return "besides his general and conclusory statements").

The Amended Complaint alleges only that Plaintiff had been to the Website after the Fair, and that he "intends to visit Defendant's school in the near future if he could access their website." (Am. Compl. at ¶¶ 32-34, 42.)  These vague and conclusory statements are plainly insufficient to establish "a real and immediate threat of future injury," as required by the Second Circuit for ADA Title III standing.  The Amended Complaint does not state, for example, when Plaintiff made those prior visit(s) to the Website, why Plaintiff is interested in Loyola, or why he would visit Loyola "in the near future."  Plaintiff's standing is also undermined by the fact that he included the same conclusory allegation that he "intended to visit Defendant's school in the near future" in all 50 of his college and university cases, which concern institutions in 42 cities (plus the District of Columbia), and 19 states as distant and varied as, for example, California, Georgia, Louisiana, Wisconsin, and Texas.  (Ryan Dec. ¶¶ 5, 6(b).)

Courts in the Second Circuit have found no standing under similar circumstances.  For instance, in *Garnet v. Ramos Bros. Inc.*, No. 16-cv-2792, 2017 WL 590323, at *3 (E.D.N.Y. Jan.

18

17, 2017), the plaintiff said that he "continues to desire to visit the Subject Property in the future," with no further details.  The court found that the plaintiff had not established an intent to return to the property.  Likewise, in *Feltzin v. Stone Equities, LLC*, the court held that the plaintiff's claim that he "plan[ned] to return to the [P]roperty once the barriers to access are corrected" both as a customer and a tester was "tantamount to an intent to return someday in the future" and insufficient to establish standing.  2018 WL 1115135, at *2, 11 (internal quotations omitted).  The court reached this conclusion even though the plaintiff traveled to the area near the property on many occasions and was originally from the county in which the property is located.[8] *Id*. at *2.  *See also Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83, 89 (E.D.N.Y. 2005) (plaintiff does not face imminent harm at six store locations because he had only alleged that he has a "general desire to patronize [defendant's] stores").

Plaintiff also cannot demonstrate imminent injury considering that he elected not to take advantage of readily available means to obtain audible, personalized information and assistance at the Fair.  ADA regulations contemplate a dialogue between a public accommodation and an individual with a visual or hearing disability in terms of what type of auxiliary aid or service to provide, but the decision ultimately rests with the public accommodation so long as the method selected is effective.  28 C.F.R. § 36.303(c).  Recently, the United States Department of Justice

---

[8]       Courts in other circuits have reached the same conclusion.  *See, e.g.*, *Norkunas v. Wynn Resorts Holdings, LLC*, No. 2:07CV00096RLHPAL, 2007 WL 2949569, at *3-4 (D. Nev. Oct. 10, 2007) *aff'd sub nom. Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269 (9th Cir. 2009) (no imminent injury despite plaintiffs' claim that they had a desire to return to the defendant's casino in the future and that they had visited Las Vegas at least once a year); *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (no imminent injury despite allegation that had plans to return to the property); *Brother v. Rossmore Tampa Ltd. P'ship*, No. 8:03CV1253T-24MAP, 2004 WL 3609350, at *5 (M.D. Fla. Aug. 19, 2004) (no imminent injury despite Plaintiff's submission of an affidavit stating an intent to return to the defendant's hotel in the future, and detailing his visits to the area several times a year); *Access for the Disabled, Inc. v. Rosof*, No. 805CV1413T30TBM, 2005 WL 3556046, at *2 n.3 (M.D. Fla. Dec. 28, 2005) (plaintiff's allegation that he intended to visit defendant's facility once a year in the future was not sufficient to establish standing); *Holt v. Am. City Diner, Inc.*, No. CIV. 05-1745 (CKK), 2007 WL 1438489, at *6 (D.D.C. May 15, 2007) (allegation that plaintiff had eaten at the defendant's restaurant and intended to return to the restaurant once the barriers were removed, coupled with his claim that he traveled to the area three times per week, was not enough to establish an imminent injury).

("DOJ") reaffirmed its view that a public accommodation can provide equal access to its goods and services through employee assistance rather than accessible technology.[9]  The Fair was a prime opportunity for Plaintiff benefit from effective communication with Loyola (and other institutions). Plaintiff cannot now claim that he faces an imminent threat of injury where he eschewed steps to obtain the very same information he claims is not accessible to him, and instead "raced to the courthouse" to file 50 nearly identical lawsuits.

Thus, in addition to the absence of personal jurisdiction over Loyola, Plaintiff also lacks standing to assert a claim under Title III of the ADA.  Accordingly, the Court should dismiss this action under Rule 12(b)(1) as well.[10]

## CONCLUSION

Based on the foregoing, Loyola respectfully requests that this Court dismiss all claims for relief set forth in the Amended Complaint based on the absence of both personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and subject matter jurisdiction under Fed. Civ. P. 12(b)(1).

---

[9]     Brief for the DOJ as Amicus Curiae, p. 12, *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017) (Egan Dec. Exh. "H," at pp. 9-12.)

[10]     Should the Court find that it has personal jurisdiction over Loyola but that Plaintiff does not have standing to assert a claim under the ADA, the Court should nonetheless decline to exercise supplemental jurisdiction over Plaintiff's remaining state and city claims, and dismiss this action in its entirety under Rule 12(b)(1).  *See, e.g.*, *Lerner v. Fleet Bank N.A.*, 318 F.3d 113, 130 (2d Cir. 2003) ("In most instances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage."), *abrogated on other grounds by, Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2016); *Bacon v. Walgreens Co.*, 91 F. Supp. 3d 446, 453 (E.D.N.Y. 2015) (dismissing ADA claim and declining to exercise supplemental jurisdiction over remaining state and city claims).

Dated: New York, New York
      April 24, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By:   */s/ John W. Egan*

    John W. Egan
    Samuel Sverdlov
    jegan@seyfarth.com
    ssverdlov@seyfarth.com
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526

    *Attorneys for Defendant*
    *Loyola University New Orleans*

56210651v.5